Mr. Matsui. May it please the Court, Brian Matsui, on behalf of Malvern. The District Court construed the term pipette guiding mechanism narrowly by inserting the word manually into the claims. That construction is wrong for three reasons. First, claim construction does not require evidence of a phrase's prior use in order to have an ordinary meaning. Under Phillips, the ordinary meaning of a term can be understood from how the words are used in context. And whose burden is it to establish this ordinary meaning? I don't think there's a burden because it's a question of law when you have just intrinsic evidence here when you're talking about it. If there was just a vowel of some sort or prosecution history disclaimer, then that would be the burden on the side that's trying to assert it. But when you're talking about something just here like what does the intrinsic record show, then there's not a burden on how you would discern the ordinary meaning of a term. And if we take a look at this claim term, there's nothing in the intrinsic record at all that would suggest that the pipette assembly has to be manually moved. The claims, the figures, the written description, they're all agnostic as to what moves the pipette assembly. In fact the patent doesn't use the word manual at all. What is your best intrinsic support for your agnostic contention? Well I think that the best intrinsic support is the fact that it doesn't say automatic or manual. When you look at the language of the claims themselves, it just discusses, if we look at for example you know claim 9 of the 175 patent at appendix 54, it's just talking about a pipette guiding mechanism arranged to guide the pipette assembly between it into at least two positions of operation. And so it's just talking about where these pipette assembly goes and what restricts its movement, not what actually moves it. Can I ask you about the, returning to the district court's opinion, I frankly am not clear. On appendix 10 and 11, first he rests on iridescent and the briefs describe why that's not a relevant precedent for the coin term issue in this case. But then he talks mainly about the prosecution history, so that's where his emphasis was, right? And can you, I'm a little unclear frankly. At the bottom of page 10, he's talking about partly the re-examination. There are two proceedings here, right? There's the re-exam and then there's the original thing on the, what's the other patent family called? The Broga. Broga, okay. So when he's talking about at the top of appendix 11, this rejection was cited during re-exam and then again he refers a few lines later to the examiner's rejection. Is he, I don't understand what he's referring to and I'll ask your friend about this too. Certainly. The examiner didn't, my understanding during the exam, the patent owner cited this and the examiner rejected his argument that this was only manual. So when he's talking about the rejection, what is he talking about? So he's talking about the rejection in the Broga prosecution history. So what he's talking about is the fact that the examiner rejected the Broga claims. Right. Because they would have been, he said, anticipated by Plotnikov the patents, the application at issue here. And he's saying that, well I think that what's going on is that the examiner rejected ultimately the statements made by the applicants. It's not entirely clear but I think. So that cuts the other way entirely. That's why I'm a little confused. I think that it is a little confusing here but I think that the key language is at appendix 11 where in the middle of the paragraph, at the middle he says, as a coined term I find that pipette guiding mechanism is limited by plaintiff's statements during prosecution of the 782 patent that the Plotnikov specification does not teach that mechanism operates manually. And so he's construing these claims. It operates automatically, is that what you were reading? That mechanism operates automatically. And so he's saying it does not teach that it operates automatically. And so I think what he's, the district court he was requiring was that there be some sort of express disclosure of automatic in the patent itself. But there isn't an express disclosure either, any disclosure of either manual or automatic because as I mentioned it's agnostic. But this is the sole basis for the narrowing of the claims. This prosecution history of an unrelated patent where the applicant's arguments were rejected by the examiner. We do have some cases but arguably in a different context where we have made statements about the inventor's statements during prosecution are indeed relevant. Again, leaving aside the fact that these were unrelated patents and not part of the same patent family. We do have those statements but those were in the context I assume where at least those arguments weren't rejected. That's correct or at least they weren't clearly rejected like they were here. And so in those, in that context where you're not talking about disclaimer of the prosecution history, what you're ordinarily talking about is maybe the prosecution history is consistent with all the other parts of the intrinsic record which clearly show the same thing. But here the problem with the district court's construction is that again its only basis for narrowing the claims to manually was based upon this prosecution history that was rejected. The argument was rejected from an unrelated patent that was then imported into the claims. And then when you look at, as I mentioned, the claims themselves don't mention automatic or manually at all. They just talk about the restrictions on the movement itself. But if we look at the specification it's similarly agnostic. If we look at column 7 of the 175 patent which is at appendix 5050, that whole column discusses in detail the fact that guiding mechanism and all the discussion there is talking about things that restrict movement like guide grooves and guide sleeves and guide pins. So around line 12 it says the guide rod is restricted by guide grooves in the positions of operation are arranged at equal distance about the entire rotation of the guide assembly but at different angular positions. And at line 57 it talks about coaxial external guide sleeve with corresponding guide pass for the guide arm. That's just talking about structures that restrict movement but none of that. And you won't find it anywhere in this passage that talks about moving the pipette assembly by hand or moving the pipette assembly by machine because it's just agnostic about it. And so I think that if we were to take a step back and look at the district court's construction here you have this term pipette guiding mechanism. And if it was really such a difficult term for which there'd be no plain ordinary meaning you would expect there would be a very long and detailed construction. Instead all the district court did was rearrange the words. Those three words and insert manually. So it just becomes a mechanism to manually guide the pipette rather than pipette guiding mechanism. There's no reason to limit the claims in such a way. Do all of the figures and I thought that there might have been at least an argument made by opposing counsel that all the figures were just showing manual operation and that you might have admitted that or your side might have admitted that. Is that a true statement or not? That's not a true statement. All we've said is that the disclosure here does not expressly disclose automatic movement of the pipette assembly and that's 100% accurate because it doesn't expressly disclose it's agnostic. But similarly it doesn't expressly disclose movement. If we look at the figures of the patents like figure 5 and figure 6 all the various figure 5a 5b appendix 43 what you're seeing is on the guide rod grooves that basically show how the movement is restricted but nothing there is suggesting that this has to be done by hand or has to be done manually or certainly can't be done with the use of the motor. I mean these are comprising claims so you don't need to detail everything like a motor or a handle or you know sort of controller. There's no dispute that there was automatic movement in the prior art. My friend on the other side he admitted that at the hearing that there was you know an arm that moved that would have the titration needle and the syringe to it. That's the same thing we're of that at appendix 865 which shows an auto ITC arm attached to you know a guided straight path and at appendix 949 to 950 there's you know a discussion about pushing a button to move the syringe and so that's all in the prior art as to you know what this was known this that it was known that you could automatically move a pipette assembly. It's just that there's nothing in the patent that would indicate that you would have to do it manually. I know you have a fallback argument even if the broker prosecution statements are incorporated into the IDS but there's also but you're arguing that they shouldn't be and or the court shouldn't have considered it but there's an argument that you conceded that. Well I don't think that we could I think that that you don't first of all no matter what it's still the prosecution history of an unrelated patent and so this court's cases like Pfizer and Hill Rom would still basically inform that you would not say that you would use that prosecution history to get to construe the scope of the claims. The argument is that it was incorporated in because it's listed in the IDS. What are the limits to that argument though because I understand that they're unrelated but it's the same exact term from similar people right it may not be the same inventor but it's it's not complete it's is it the same family or something it's it's the same term it's the same kind of concept right. It's so it's not at all the same family it is common ownership but that is just like that's just like Pfizer. Right right right but so in here I mean to me what's compelling is that you may have made an argument to try to get a patent in that separate unrelated patent that you lost maybe it was unwise or you did it for other reasons but you lost that and it wasn't relied upon what would happen if in that case you had argued that it that it was a coin term and they'd adopted that specific meaning you proposed there would that have no effect on this case? I mean this court's precedent in Hill like in Hill Rom and Pfizer would indicate that it still would not have an effect that you're that you're not looking at an unrelated patents prosecution history even if there is like a disclaimer but of course as you mentioned judge I think that I have a hard time accepting that if it's a coin term and I don't honestly get there on this one but if it is a specific coin term that that was created by this owner or you know whatever and it was a specific meaning and it was relied upon by an examiner even in an unrelated patent to grant that patent that you would be allowed to argue a completely different interpretation just because they're unrelated none of that is here but it seems to me that the mere fact that it's unrelated doesn't answer the question. I mean it's yes I think that it had been accepted you there would be a better argument that there should be some sort of estoppel principle although this court did address that in Hill Rom but I think that had that been the basis for overcoming a rejection then I think that you know it would sort of look like maybe you should hold the patent owner to that but that again is not what we have here what we have here is the actual argument was rejected and so it does it seems actually more unfair to hold the patent owner to that argument that was rejected that wasn't the basis to overcome a rejection. Was the argument there that it was a no your honor I mean I don't I don't think that you know to the extent there is this separate coin term precedent like I don't think that pipette guiding mechanism where you have three commonly understood words which the district court recognized are you know commonly understood words would be the type of you know phrase that you would say as a coin term I think that a coin term is something that's probably more vague like inherently vague so that it's something that has been chosen like a term of art but pipette guiding mechanism the way it's used in column seven of the I don't think that that's something to say that you wouldn't have an ordinary meaning for. Coin term is very close to would you agree iridescent as a coin term highly subjective I think that that is that that you know looking at like the use of the word coin term that would make much more sense because you would have a phrase there that you can't understand in context what it means just looking at it in the context of the patent but here where you just have words like pipette guiding mechanism that have commonly understood words the words are being used precisely as you expect them to be used and the patent claims themselves provide details about what the limitation is I don't think that that's a coin term certainly if you have magnetic fuzz or something along those lines it could be that the patentee is trying to create a term of art and so then you might need to look to the specification to see what does that really mean what does that term of art mean and in that situation you could see that you would limit to but even if you were to say this is a coin term you would be limited to the structures that are disclosed here in the specification which just basically are restrictions on the type of movement not how the pipette assembly is moved so even if you were to sort of buy into the coin term framework the district court had it still wouldn't be a justification to narrow the claims here i'd like to reserve my time for the funnel thank you thank you your honor good morning starting with the notion that we just ended on and what is a coin term in indicon custom link was determined to be a coin term in their data group key was determined to be a coin term now they didn't use the phrase coin term they said they had no ordinary meaning in the art in honeywell terrain floor boundary was a coin term so then what which of these terms I mean do you agree that individually there is these are not coin terms these are terms that are found in the art we separate the frames there's no evidence at all that the term mechanism has any meaning in the art it's a nonce term it's like means it doesn't indicate any structure it doesn't indicate anything specifically so we all know what a mechanism is conceptually but in the art of itc's no one says ah mechanism I know what that is there was no means plus function arguments raised here right there was not because we made the argument we made and we wanted our fallback argument had we got there would have been a 112 f but we never got there because judge andrews accepted correctly that this was a term that had never been used they had every opportunity he invited them to offer expert testimony I'm an expert I'm a posa I know what this means there were 150 references cited not a single one used the term mechanism let it like let alone pipette guiding mechanism and when they themselves in the broga patents the same assignees were going to the same feature but this time automated they didn't use the phrase pipette guiding mechanism they used pipette translation unit so they used a totally different term when they were trying to capture the scope not think that do you agree insofar as what it means is a mechanism that guides about the pipette I mean you just look at the words and the english language resolves at least up till that point yes and I think judge andrews acknowledged all three words can be found in Webster's but that's no different than custom meaning of the term that it's a mechanism that guides a pipette that's what it says well if it's read that way with mechanism with no defined structure it has no meaning other than something the function of anything that gets us into means plus function land that doesn't resolve this case under the guise that the district court resolves if this is not a coin term then it is means plus function and that would be even worse for plaintiffs because the structure is so narrow and but that's not the case before us we want us to go there you want us to mitigate a case that wasn't the arguments that weren't made with the district court on the means plus function no your honor if if you I believe that judge andrews got it right but if you disagree that judge andrews got it right the response is to send it back to analyze whether it is a means plus function term because even in their briefing they describe it as and they're never that a simply a mechanism arranged to guide well that's a functional limitation that sounds a lot like 112f so you preserve means plus function arguments below you just indicate that was your fallback was that preserved your honor we first of all it's of course de novo but in any event you don't preserve something when you win your lead argument there's no waiver issue well you preserve them if you make them during claim construction we don't believe it's means plus function did you make that no because we didn't believe it is means plus function we believe it's a point term so you didn't preserve it you you can't not you can't waive a de novo as a matter of law you can't waive a de novo review of something when you win your lead argument you don't need to preserve fallbacks as just as a legal matter but i i i don't think you're right on that but judge andrews can decide that if it goes back understood your honor can i move you to another issue sure it's just really perplexing to me which is the public notice function underlies everything we absolutely are how is a member of the public supposed to interpret the fact that in this prosecution history even assuming it's relevant you've got someone saying this and the examiner saying you're wrong and that's the end of the thing so if anything why isn't it the case that if the public would derive anything from this prosecution history it would be no not yes to what the patent owner said so your honor let's track this chronologically for a moment it's an important question you ask the asinine of the patented issue in this case said first in the broga patent itself that uh that the platnikov patent is incorporated by reference and it is a manual itc system those that wasn't the prosecution history that was in the patent itself and that's at a 6996 so in the patent itself the asinine tells the world that the platnikov patent is a is a manual itc so that's the pat that's public notice all over now let's go to the prosecution history where the asinine said quote there is no teaching in platnikov indicating that a pipette guiding mechanism should provide automatic automatic automated translation of the pipette the pipette guiding mechanism 510 using exactly the same number is purely a passive guiding mechanism that statement was made in the broga patent prosecution that prosecution was then incorporated in the platnikov re-exam before you get to the re-exam what did the examiner do with that argument made during prosecution the examiner he rejected or she rejected it well disagreed but then they still won the patent because they argued common ownership for something else so the examiner rejects the argument and they move on to something that so how is the public supposed to accept what the examiner himself rejected and which they didn't pursue on appeal or whatever they moved up to something else which is something entirely different so how is the public supposed to take away that uh what the patent owners tried to argue and was rejected by the examiner really has meaning in terms of the as this court said in multi-tech at 1350 quote we have stated on numerous occasions that a patentee statements during prosecution whether relied on by the examiner or not are relevant to claim in that case was it rejected by the examiner or whether we brought i mean there were there's three buckets here there's the bucket with the patent and what the bucket you're talking about is it could be the patent owner says a lot of things during prosecution and the examiner never gets there but in this case that's not this case right in this case the examiner rejected the argument made by the and and then the patent owner came back yes but remember the patent owner came back in a second round that quote i just read you was the second round so the examiner said it's automated the patent owner says it's not the examiner says yes it is the patent owner comes back and says it's really not but also your honor you don't you're rather you're you're the patent uh a patent office you don't have to get there because we're common owners therefore it's not prior art so the the last word as it were was it was the patent owner saying you're wrong but in any case word on this question was by the examiner that rejected the argument made by the path number did the examiner not reject the argument the examiner's well on this automatic manual and then but then they came back and said you're wrong i mean it wasn't there was there was a the ass in the uh malvern in this case came back and this and this is at eight that's the point i'm trying to make right what is the public supposed to take away what the patent owner argued and maybe re-argued and re-argued or what the examiner did in rejecting that argument and granting the patent on other grounds well remember this was also in the patent itself so this whole prosecution issue isn't necessary for this the the argument that judge andrews accepted to be accepted by this court the broga patent itself says it was a manual system that the platnikoff was a manual system and so prosecution history aside we have the coin term being defined in the broga patent which was then incorporated by reference into the platnikoff intrinsic record so tell me what is the district court in his opinion in appendix 11 where he says plaintiffs first he says this rejection was cited during the re-exam this rejection what rejection is he talking about i mean the examiner rejected the argument and so when he says this rejection on the first line what rejection is he talking he's talking about the second round i believe the second go round where the examiner said that the what the quote i read you was responding to but they went back and forth back and forth and then malvin said it doesn't matter anyway your patent office because we have common ownership and therefore it's prior so the issue was unresolved it's not like malvin ever said all right you're right this was automatic but we have another way to go about it they agreed to disagree the patent office and malvin said we're not going to resolve this they each took two rounds at this and then malvin said but it doesn't matter anyway uh the point the the key issue here from our perspective we is counsel and and throughout this litigation has tried to disagree that it's a coin term do you agree that you lose no because in in retractable and simon and network commerce and held to what the specification discloses and here we keep hearing the term agnostic agnostic is just a fancy word for it doesn't disclose an automatic translation and so they're trying to read this term broadly enough to include something that they admitted and counsel said that they acknowledged that it wasn't that automatic wasn't expressly in the patent they went one step further a3403 at argument at the claim construction hearing they said unambiguously that potnikoff doesn't quote doesn't have a disclosure of an automatic pipette guiding mechanism that's not agnostic that's an absence are you potentially raising a 112 issue that you have with the pen if your honor if we were not successful today ultimately or on remand we would of course argue 112 written description or enablement issue but what microsoft and retractable simon network put and then of course all the coin term cases are deddo and indicon and iridescent and the like all of those say you have a term like this you and your spec doesn't give you the breadth you want we're going to limit you to what the spec says and that's of course what phillips tells us that the best guide to the meaning of the term is is to look at the patent the intrinsic record as a whole and again it's not agnostic as to automatic automatic just isn't there and they told us in the broga patent automatic just isn't there they told us in the prosecution history of broga automatic just isn't there so we're giving them claim scope that in trying to get the next generation of patents they told the patent office and the public it's just not there any other questions oh thank you your honor will restore three minutes thank you your honor i'd just like to start with the means plus function issue again that was exactly what i wanted you to start with what is your position that was forfeited it was never made at claim construction so there is no means plus function argument when you look at the claim language here too there is structure it discusses more than just pipette guiding mechanism the limitation goes on and discusses to move within two different positions for washing and for loading the titrant to be rotational is that something that can be forfeited i mean we do claim construction de novo it's clearly a plenty of cases that say you know you say one claim construction he says the other and we can do you know come up with whatever claim would we be precluded from concluding or deciding this i believe you would because it still is it's effectively changing the construction and why i'm on remand well it would you would agree that it would be up to the district court judge i mean we would say that could renew a an argument even if not made originally based on this and it may depend your i'm sorry to interrupt it may depend your honor of course as to what the rules are the local rules would be as to what what arguments you could make in claim construction if you haven't made them before but certainly you know it's something that they could make i guess below which is the district forfeiture is ultimately discretionary it is as opposed to other waiver type things but you can forfeit legal arguments if you don't raise them timely that's correct your honor and but you have an argument on means plus function we don't think that this is a means plus function claim anyway so i i think that the more important thing of course is just to get the claim construction here corrected and i think that the rule that waters is advocating effectively is going to require experts in every single claim construction case even when you have very clear ordinary meanings to words because you're always going to need an expert to say well the ordinary meaning of pipette guiding mechanism here is this and that's just unnecessary burdens on district courts the only thing in his other argument his final argument about there's just nothing here there's nothing there that says anything about the automatic but there's nothing that says anything about manual either and it's considered i think they might disagree i mean at least they have this user thing right but that's talking about you know a lot of different things it's not talking about the pipette guiding mechanism there are things that are automated in plot nakab and there are things that can be manual or they can be automated and there's nothing again when you're looking at the pipette guiding mechanism that indicates that it has to be i'd like to just say one thing on the ids the only things that are in decided in the ids are the rejection so if you're talking about the public notice function the only thing that a person ordinary skill in the art will look to would be what the examiner said not even what the applicant said in the unrelated patent which shouldn't be considered anyway because of pfizer and hill rom and lastly what i was looking at appendix 6996 and that's the broga patent and what it's talking about is you know a manual more manual itc for the plot nakab patents but there are lots of things in broga that are automated that aren't in in plot nakab in the patent here such as it's talking about things like you know auto washing and auto reloading so it's just a mere fact that the broga patents say you know it's the plot nakab patents have more manual doesn't mean that it's talking about manual guiding